IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM HENRY PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:16CV1074 |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff William Henry Perry ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for Supplemental Security Income on July 29, 2013, alleging disability as of that date. (Tr. at 17, 145-54.)[2] His application was denied initially (Tr. at 52-65, 88-91), and that decision was upheld upon reconsideration (Tr. at 66-85, 93-95).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 102.) Plaintiff attended the subsequent hearing on March 15, 2016, along with his attorney and an impartial vocational expert. (Tr. at 17.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and, on July 14, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 7-10).[3]

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

---

[3] Plaintiff previously filed an application for Supplemental Security Income that came before a different ALJ for a hearing on June 8, 2012, and the claim was denied in a decision dated August 16, 2012. That determination was upheld by the Appeals Council on June 4, 2013. Plaintiff did not appeal that determination and instead filed the present application on July 29, 2013.

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar and cervical spine; peripheral neuropathy; mild carpal tunnel syndrome; obesity; an affective disorder; an anxiety disorder; cannabis abuse; and alcohol use.

---

assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

(Tr. at 19.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 20-22.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he

> has the residual functional capacity to perform light work (i.e., lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently as well as sit, stand and/or walk up to six hours each during an eight-hour workday) as defined in 20 CFR 416.967(b) except he must have the flexibility to alternate between sitting and standing every 30 minutes; he must never climb or balance; he could occasionally stoop; he could frequently kneel, crouch and crawl; he could occasionally reach overhead with bilateral extremities; he could frequently handle and finger with both upper extremities; he must avoid all exposure to hazards, such as unprotected heights and dangerous machinery; he could understand, remember and carry out simple instructions, which is defined to mean activity that is consistent with a reasoning level of "two" or "three" as defined in the *Dictionary of Occupational Titles;* he could sustain attention and concentration sufficient enough to carry out those simple instructions over the course of an eight-hour workday; he could work in occupations that require occasional contact with co-workers, supervisors, and the public; he could work in a low stress setting, which is specifically defined to mean: no fast paced production, only simple work related decisions, and few or no changes in the work setting.

(Tr. at 22.)[6] At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as an electrician helper. (Tr. at 29.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, he could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 30-31.)

---

[6] This RFC included all of the limitations reflected in the prior determination dated August 16, 2012. In addition, this RFC reflected additional limitations that were not included in the 2012 determination, that is, that Plaintiff "alternate between sitting and standing every 30 minutes; . . . he could occasionally stoop; he could frequently kneel, crouch and crawl; he could occasionally reach overhead with bilateral extremities; he could frequently handle and finger with both upper extremities; . . . he could work in occupations that require occasional contact with co-workers, supervisors, and the public; he could work in a low stress setting, which is specifically defined to mean: no fast paced production, only simple work related decisions, and few or no changes in the work setting." (Tr. at 29, 39.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, Plaintiff contends that the ALJ failed to properly weigh opinion evidence, including (1) the opinion of Plaintiff's treating physician, Dr. John Scagnelli, (2) the assessments of the non-examining state agency physicians, and (3) a favorable Medicaid determination. Second, Plaintiff appears to dispute the ALJ's adverse credibility finding, although he frames it as a more general challenge to the RFC.[7] After a thorough review of the record, the Court finds that neither of these contentions merits remand.

    A.    Opinion Evidence

        1.    Dr. Scagnelli

Plaintiff first contends that the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Scagnelli in accordance with 20 C.F.R. § 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight.

---

[7] Plaintiff raises these contentions in reverse order. Because Plaintiff relies of the supportability of Dr. Scagnelli's opinion in contesting the ALJ's credibility finding (see Pl.'s Br. [Doc. #13] at 9), the Court first turns to the ALJ's assessment of the opinion evidence.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 416.927(c); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p, at *5 (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[8]

On February 3, 2016, Dr. Scagnelli completed a two-page form provided by Plaintiff's attorney. He identified cervical radiculopathy and peripheral neuropathy as Plaintiff's only

---

[8] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

diagnoses. Dr. Scagnelli then circled answers regarding Plaintiff's degree of limitation in nine areas. In particular, he indicated that Plaintiff could work only two hours per day; could sit for 60 minutes at a time and stand for only 15 minutes at a time; could only lift five pounds, even on an occasional basis; could never bend; and could perform only occasional manipulations with either hand. Dr. Scagnelli also opined that Plaintiff suffers from severe pain. (Tr. at 522.) Despite the availability of an ample comments section, he left the remainder of the form blank. (Tr. at 522-23.)

The ALJ assigned little weight to Dr. Scagnelli's opinion and explained his rationale for this assignment as follows:

> In this instance, the treating physician's opinion is not supported by his own treatment records and it is contradicted by other evidence in the record. The undersigned assigns this opinion little weight as it posits an extreme set of limitations and does so without any citation to objective findings or clinical signs and without any explanation. This statement is a minimally completed check box form and it posits limitations in excess of what even the claimant testified to, e.g. lifting only five pounds[,] and posits extreme limitations, i.e. can *never* bend, which are not supported by the objective findings noted on this provider's own examinations. Specifically, the treatment note at Ex. B20F, when the claimant was seen soon after this form was completed, reveals full hand strength as well as normal reflexes and sensation. Thus, there is nothing in the treatment records to support the limitation to only occasional handling and fingering bilaterally. Moreover, there is nothing in that fairly routine examination that would support the extreme limitations indicated on the form.

(Tr. at 27.)

Plaintiff now challenges the ALJ's characterization of the opined limitations as extreme and unsupported, arguing, for example, that "it has been noted multiple times in the record that Mr. Perry could only stand/walk for 15 minutes at a time." (Pl.'s Br. at 11) (citing Tr. at 279, 281, 290, 333). However, Plaintiff's citations refer solely to his self-reported limitations, as recorded in the social history portion of his treatment notes, in response to questions such

9

as, "How long can you tolerate sitting?" The mere fact that a physician memorializes a claimant's subjective complaints in treatment records does not transform the complaints into objective medical findings. Craig, 76 F.3d at 590 n.2.

Similarly, Plaintiff argues that "[t]he lifting and manipulative restrictions are based on Mr. Perry's bilateral neuropathy and bilateral carpal tunnel syndrome, both of which are well-documented in the record." (Pl.'s Br. at 11) (citing Tr. at 263, 291, 484-85, 508-10). Again, however, the evidence of significant weakness espoused by Plaintiff consists primarily of his subjective complaints. In contrast, the objective evidence, as well as the ALJ's discussion of it, reflects, at most, a minimally restricted range of spinal motion, full to slightly diminished strength in all muscle groups, and normal to slightly diminished sensation in his extremities. (Tr. at 26, 249-50, 266, 276, 288, 290-91, 304, 364, 412, 497, 503, 514, 519.) Moreover, Dr. Scagnelli never identifies Plaintiff's carpal tunnel syndrome among his diagnoses, let alone ties it to any of the posited limitations, nor does he connect specific limitations to Plaintiff's neuropathy.

In fact, as the ALJ correctly asserts, Dr. Scagnelli's lack of explanation for the opined restrictions is, in and of itself, a proper basis for discounting his opinion. The regulations specifically provide that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 416.927(c)(3). Where, as here, the opinion consists of a minimally-completed checkbox form, it is of limited probative value. See Coleman v. Colvin, No. 1:15CV751, 2016 WL 4223583, at *6 (M.D.N.C. Aug. 9,

2016), report and recommendation adopted, No. 1:15CV751, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016) (The ALJ properly assigned no weight to nurse practitioner's opinions where she provided "little-to-no explanation of the evidence used to form her opinions, which [we]re set forth either in short and conclusory letters or in a check box form, and the record lack[ed] objective medical evidence in support of her conclusory assertions.") (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); see also McGlothlen v. Astrue, No. 7:11-cv-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23 2012) (finding a form questionnaire "entitled to little weight" due to lack of explanation); Bishop v. Astrue, No. C/A 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) (same). In addition, the ALJ also noted the inconsistencies between Dr. Scagnelli's opinion and the treatment records and other evidence in the record, including Plaintiff's own testimony.[9] In short, the ALJ in the present case provided legally-sufficient reasons, supported by substantial evidence, for discounting Dr. Scagnelli's opinion, including (1) the conclusory nature of the opinion itself and (2) its lack of support in, and lack of consistency with, the objective medical evidence, including the treatment notes, and the other evidence in the record. Accordingly, the Court finds no error.

 2. State agency physicians

In a related argument, Plaintiff contends that the ALJ erred by assigning more weight to the opinions of the state agency physicians than to the opinion of Dr. Scagnelli. In

---

[9] The ALJ noted, for example, that Dr. Scagnelli opined that Plaintiff could lift no more than 5 pounds even occasionally, while Plaintiff testified that he would be comfortable lifting 10 to 15 pounds without causing problems with his hands or issues of pain. (Tr. at 27, 522, 564.)

11

particular, he argues that these opinions, dated June 3, 2014 and February 6, 2015, were "not based on a review of the entire record in this case" as they were issued "well before Dr. Scagnelli's opinion and before [Plaintiff] was diagnosed with bilateral carpal tunnel syndrome." (Pl.'s Br. at 11-12.) As an initial matter, the Court notes that while the ALJ did assign substantial weight to the February 6, 2015 physical assessment of Dr. Frank Virgili, he assigned *no* weight to the 2014 assessment of state agency consultant Tasha Jackson, noting that "she is a single decision maker and not a medical doctor." (Tr. at 26.) The ALJ then expressly acknowledged that, although Dr. Virgili rendered his opinion more than a year before Plaintiff's hearing, he (1) "had the opportunity to review a substantial portion of the medical evidence" and (2) the "evidence received after those opinions were rendered reveal [Plaintiff] to be on a stable, steady course and do not support a finding that [Plaintiff's] condition is materially worse now than it was at the time the opinions were rendered." (Tr. at 26-27.) Nevertheless, the ALJ "included manipulative limitations [in the RFC] to account for the more recent diagnosis of carpal tunnel syndrome." (Tr. at 29.) Because neither Plaintiff nor the record itself suggest any additional, recent changes in Plaintiff's condition that would render Dr. Virgili's opinion unsupported, substantial evidence supports the ALJ's assignment of weight.

   3. Medicaid

Plaintiff's next challenges the ALJ's assignment of little weight to Plaintiff's prior Medicaid determination. On July 17, 2015, a State Hearing Officer for the North Carolina Department of Health and Human Services ("NCDHHS") found Plaintiff Medicaid eligible, effective January 2015. (Tr. at 226-29.) As provided at 20 C.F.R. § 416.904 and further

12

explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06-03p, 2006 WL 2329939, at *7. Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies . . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Id. at *6. Moreover, "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7; see also Bird v. Commissioner of Social Sec. Admin., 699 F.3d 337 (4th Cir. 2012), (concluding that under 20 C.F.R. § 416.904 and SSR 06-03p, "in making a disability determination, the SSA must give substantial weight to a VA disability rating," and "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").[10]

---

[10] The Court notes that for claims filed after March 27, 2017, this regulation has been amended and Social Security Ruling 06-03p has been rescinded. The new regulation provides that the Social Security Administration "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 416.904; 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263 (Mar. 27, 2017). In rescinding SSR 06-03p, the Social Security Administration noted that for claims filed on or after March 27, 2017, "adjudicators will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive to us." 82 Fed. Reg. 15263. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the guidance set out above.

In the present case, the ALJ addressed the Medicaid decision and noted that pursuant to SSR 06-03p, that decision must be considered, particularly because "the Division of Medical Assistance uses the same criteria for determining disability as does the Social Security Administration." (Tr. at 29.) However, the ALJ in the instant case explained, at great length, his reasons for deviating from the Medicaid decision. Specifically, the ALJ noted that,

> [b]ecause the decision at issue is worded in vague, general, and conclusory terms and only generally recounts some of the evidence used to reach the decision, the undersigned finds that it provides little insight into the claimant's impairments. Further[,] in Conclusion of Law #2, the Hearing Officer finds that pain is a severe impairment, but, of course, pain is a symptom, not an impairment. The Hearing Officer concluded that the claimant must alternate sitting and standing so frequently that the range of work available is so narrowed that a finding of disabled is warranted, yet does not explain why the claimant's neuropathy—which is the focus of the Hearing Officer's decision—would affect the claimant's ability to sit. Nor does the Hearing Officer address the claimant's ability to lift, carry, push, or pull. Ultimately, it must be said that the Hearing Officer has not made a logical connection between the medical evidence she sparsely recounts and the extreme limitations she finds, not does she provide a legally sufficient justification for finding the claimant so limited. Additionally, the conclusions of the Hearing Officer are not consistent with the evidence before the undersigned, which supports, for all of the reasons explained herein, a finding that the claimant is capable of a wider range of work. For these reasons, the undersigned accords the decision of the Hearing Officer little weight.

(Tr. at 29.)

Plaintiff now contends that the ALJ erred in assigning little weight to the Medicaid decision because (1) the NCDHHS "applies virtually the same rules as the Social Security Administration when determining disability," and (2) the NCDHHS "determination is consistent with the opinion of Dr. Scagnelli, Mr. Perry's treating physician, that he cannot perform work even at a sedentary level." (Pl.'s Br. at 12.) Plaintiff's first argument ignores the ALJ's clear acknowledgment that he was required to consider disability decisions by other

14

agencies, "particularly . . . where, as here, the Division of Medical Assistance uses the same criteria for determining disability as does the Social Security Administration." (Tr. at 29.) However, the ALJ went on to explain that, "[p]er SSR 06-03p, decisions from other agencies provide insight into the claimant's impairments only to the extent that they reveal the evidence used to reach the decision of disability." (Id.) As the ALJ then described in detail, the hearing decision at issue here simply failed to make the required "logical connection between the medical evidence she sparsely recounts and the extreme limitations she finds." (Id.) Notably, the only evidence Plaintiff offers to refute this finding is the opinion of Dr. Scagnelli. Because, as discussed above, the ALJ did not err in assigning little weight to the "extreme," conclusory limitations posited by Dr. Scagnelli, the consistency of this opinion with Plaintiff's Medicaid decision fails to render the ALJ's treatment of that decision unsupported by substantial evidence.

B. Credibility

In his final contention, Plaintiff again challenges the RFC, this time arguing that his "credible testimony serves to illustrate that he is unable to work due to chronic severe pain." (Pl.'s Br. at 8.)[11] In making this assertion, Plaintiff fails to acknowledge that the ALJ found his "statements concerning the intensity, persistence[,] and limiting effects of these symptoms . . . not entirely consistent with the evidence." (Tr. at 23; see also Tr. at 25-26.) In other words, the ALJ found Plaintiff's testimony less than credible, and an ALJ must include only credibly-established limitations in the RFC. See Hines, 453 F.3d at 565 n.3.

---

[11] Plaintiff also argues that the opinion evidence, namely the opinion of Dr. Scagnelli, "supports the fact that [Plaintiff] is unable to perform work at any exertional level." (Pl.'s Br. at 9.) In doing so, he merely reframes the arguments discussed, and dismissed, above.

15

Defendant now contends that Plaintiff waived any challenge to the ALJ's credibility finding by failing to directly contest that finding in his brief. (Def.'s Br. [Doc. #15] at 18 n.8.) However, giving the broadest reading to Plaintiff's arguments, the Court finds that his RFC argument can be construed as a challenge to the ALJ's adverse credibility finding. Nevertheless, this challenge fails to merit remand.

In Craig v. Chater, 76 F.3d at 594-95, the Fourth Circuit set out a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 416.929(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional

limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3):

(i) [Plaintiff's] daily activities;
(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff alleged chronic pain due to degenerative disc disease and peripheral neuropathy, and the ALJ determined at step one of the Craig analysis that these conditions could reasonably be expected to produce his alleged symptoms. However, as noted above, the ALJ determined at step two that the evidence failed to support the intensity and

persistence of the pain alleged by Plaintiff or the extent to which his pain limited his ability to work. (Tr. at 23, 25-26.) In particular, the ALJ found as follows:

> The claimant's neck and back pain due to degenerative disc disease is confirmed via objective tests in the record. However, he admitted to improvement in neck and upper extremity dysfunction following surgery. He also demonstrated full motor strength in bilateral arms. With respect to his peripheral neuropathy, the claimant did exhibit some reduced sensation and strength in his lower extremities but consistent[ly] displayed a normal gait and station. His carpal tunnel syndrome did not result in major motor deficits in his hands and was classified as "mild." . . . Much of the claimant's hearing testimony is simply inconsistent with, and not supported by, the medical evidence of record, which reflects generally normal physical examinations despite the findings of slightly reduced strength and some diminished sensation. Further, there is no support in the record for the claimant's assertion that he can only stand for five or ten minutes; that is a level of impairment he has not reported to any treating source. Additionally, the treatment the claimant currently receives to manage his pain has been routine, conservative, and not in any way commensurate with allegations of symptoms so severe as to preclude work. The claimant takes only gabapentin for his pain. The claimant's treatment for his conditions have shown only mild restrictions and his allegations of disability are not consistent with the minimal objective findings. However, recognizing that the claimant did have limitations because of his conditions, the undersigned reduced his [RFC] to light work with the additional limitations noted above.

(Tr. at 26.) This discussion clearly takes into account Plaintiff's "medical history, medical signs, and laboratory findings" as well as the factors set out in 20 C.F.R. § 416.929(c)(3), such as the extent and effectiveness of Plaintiff's treatments. Plaintiff makes no showing that this determination was "patently wrong," as required under the regulations. In fact, to the extent that Plaintiff alleges any medical evidence of limitations consistent with his testimony, he again relies entirely on (1) the discounted opinion of Dr. Scagnelli, and (2) his self-reported symptoms, as recorded in his treatment records. As discussed supra, the ALJ provided legally sufficient reasons for discounting this evidence. Accordingly, the Court again finds no error.

Finally, the Court notes that Plaintiff raises additional contentions regarding the evidence and essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained the decision, explained the reasons for the weight given to the opinion evidence, and supported that explanation with substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 21st day of August, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
